IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  MINDI A. PERRY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIV-15- 517-D |
| | ) | |
| 1.  SOUTH PARK HEALTH CARE, LLC, d/b/a SOUTH POINTE REHABILITATION & CARE CENTER, | ) ) ) ) | |
| | ) | ATTORNEY LIEN CLAIMED |
| Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

**COMES NOW** the Plaintiff, Mindi A. Perry, and for her Complaint in the above-entitled action, alleges and states as follows:

### PARTIES

1. Plaintiff Mindi A. Perry is an adult female resident of Oklahoma County, Oklahoma.

2. Defendant is South Park Health Care, LLC d/b/a South Pointe Rehabilitation and Care Center, an entity doing business in Oklahoma County, Oklahoma.

### JURISDICTION AND VENUE

3. This is a cause of action arising out of Plaintiff's former employment with Defendant and is based on claims of (a) disability discrimination and retaliation in violation of the ADA and ADAAA, (b) failure to pay wages and retaliation in violation of the Fair Labor Standards Act and Oklahoma state law, and (c) whistleblowing in violation of state

1

law.

4. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. §1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims, and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5. All of the actions complained of herein occurred in Oklahoma County, Oklahoma. Defendant do business in such county and may be served in said county. Oklahoma County is located in the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

6. Plaintiff has exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about February 11, 2015. Plaintiff received her Dismissal and Notice of Rights letter from the EEOC dated February 25, 2015 (received by Plaintiff by mail thereafter) and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

## STATEMENT OF FACTS

7. Plaintiff began her employment with Defendant on or about March 19, 2013 as a Certified Medical Assistant ("CMA").

8. Upon Plaintiff's hire, Plaintiff notified Defendant that she had a back condition that prevented her from lifting anything over ten (10) pounds and that she could not perform excessive squatting, bending or twisting. However, she successfully passed a physical before

beginning her employment.

9. Throughout Plaintiff's employment, her performance was at least satisfactory. In fact, after approximately two (2) weeks of employment, she was offered a permanent position on the skilled unit where she worked to increase safety ratings and meet state requirements. Plaintiff was also given a $1.50 per hour raise which she received until in or around June 2013.

10. In or around June 2013, Plaintiff had to undergo a partial hysterectomy and was off work for approximately eight (8) weeks. She returned to work on or about August 1, 2013, where she was reassigned to the Long-term care hall.

11. Shortly thereafter, in or around September 2013, Plaintiff began to experience pain in her abdomen. Her doctor notified her that it was a complication from her hysterectomy and that she would need to undergo another surgery which was scheduled to take place on or about November 15, 2013.

12. Prior to her November 15, 2013 surgery, Plaintiff reviewed her paystubs and noticed that the $1.50 raise she had been paid through June 2013 had been removed upon her return from surgery on or about August 1, 2013.

13. Plaintiff immediately spoke with payroll and human resources regarding the pay errors and was told they that they would look into the issue.

14. Plaintiff was off work for approximately three (3) weeks following her second surgery on or about November 15, 2013. Upon her return to work in or around early

December 2013, she provided Defendant with a doctor's note restricting her from lifting, pushing or pulling anything over ten (10) pounds and requesting that she be allowed to sit about every half hour for several minutes, as needed, until otherwise instructed by her doctors.

15. Due to Plaintiff's medical conditions, she is a qualified individual with a disability within the meaning of the ADA and ADAAA in that she was disabled, has a record of disability, and/or was perceived as disabled. Further, her disability substantially limits and/or limited her in one or more of her major life activities, including but not limited to lifting, pushing, pulling, walking, sitting and standing. However, at all times relevant hereto, Plaintiff was able to perform the essential functions of her job with or without reasonable accommodations.

16. Upon returning to work, Plaintiff again spoke with payroll and human resources about the failure to pay wages in association with the raise in pay she was not receiving. Plaintiff also notified Director of Nursing Shana Martin that she had not been paid the raise given to her. She was told that Defendant would look into it and see what could be done.

17. After several weeks, Plaintiff was told that the pay issue was a corporate problem and that nothing could be done to correct it.

18. In or around the summer of 2014, Defendant performed renovations in its facility. When the floor was removed, black mold was found as well as a spot where the

floor had deteriorated, leaving a large hole measuring approximately 4 feet by 2 feet. Defendant did not repair the floor for several months, instead covering the hole with plywood and putting wet floor signs over it. Plaintiff complained to her supervisor, Tiffany Bryant about the unsafe working conditions and that the mold and floor were dangerous and hazardous and a significant health concern for the residents and the employees.

19. In or around September 2014, a new executive director, Adam (last name unknown), was hired. Adam met with employees to discuss any concerns they had with the company, and Plaintiff notified him that she had not been paid a raise she had been given. Adam stated that he would look into her issues.

20. Approximately two (2) weeks later, Plaintiff was notified by Adam that she would be paid her raise retroactively to July 2014, however she would not be paid the difference from August 2013 to June 2014 because Defendant allegedly had changed payroll providers. Plaintiff asked Adam to continue to look into the unpaid raise which he agreed to do.

21. In or around mid-November 2014, Plaintiff spoke with Adam and payroll regarding the unpaid raise. Plaintiff was told that nothing further could be done.

22. Plaintiff then called the Oklahoma Department of Labor on or about November 21, 2014, to ask how to recover unpaid wages. Plaintiff was told that Defendant was required to keep payroll information for the past three (3) years and that Plaintiff should request her pay information to show the pay discrepancy.

23. Plaintiff then spoke to the payroll department. Payroll stated it was unable to provide the pay information, to which Plaintiff stated the Department of Labor told Plaintiff that Defendant was required by law to maintain records of three (3) years pay information.

24. Less than one (1) week later, on or about November 24, 2014, Plaintiff was told by Cheryl (last name unknown) that she was being suspended without pay until further notice allegedly due to missing narcotics. Plaintiff was told that the medicine counts on her cart were allegedly incorrect. In response, Plaintiff provided her supervisor, Tiffany Bryant, a copy of the records to show that all medications were accounted for.

25. About one week later, Plaintiff had not been notified of the results of the investigation. Therefore, she contacted Defendant and went into the facility to ask how the investigation was proceeding, as most investigations took 3 to 5 days. Plaintiff was told by Acting Administrator Cheryl that Plaintiff was being terminated allegedly for misappropriation of narcotics. Plaintiff was told that Defendant had a statement from a patient stating that the patient had not received her medication.

26. However, the reason given for Plaintiff's termination was pretext. The patient in question had recently had their medication schedule changed. Plaintiff had notified her supervisor, Bryant, that the patient was receiving too large a daily dose of medication and that her medication schedule needed to be modified. Bryant agreed and told Plaintiff that she would take care of it. Additionally, the records Plaintiff provided to Bryant reflected this change.

27.  Moreover, the standard procedure for missing narcotics is to suspend and drug test everyone who worked on that medicine cart. However, no drug tests were administered and no other employees were suspended or terminated.

28.  In addition, following Plaintiff's termination, she was notified that Bryant had falsely told two individuals, Connie Williams and Mel (last name unknown), in or around December 2014, that the State had taken Plaintiff's CMA licence. To the contrary, Plaintiff currently holds an active CMA license.

29.  As a direct and proximate result of Defendant's actions, Plaintiff has suffered the injuries described hereafter.

## COUNT I- ADA AND ADAAA

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

30.  The matters alleged above constitute discrimination and retaliation based on a disability, a record of a disability and/or perceived disabilities in violation of the ADA and ADAAA.

31.  More specifically, Plaintiff was a qualified individual with a disability in that she suffers from a physical impairment (as described above) which substantially limits her ability to perform one or more major life activities as set forth above.

32.  Despite said impairments, Plaintiff could perform the essential functions of her job with or without reasonable accommodations at all relevant times hereto.

33. As a direct and proximate result of Defendant's actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

34. Because the actions of Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

### COUNT II - Failure to Pay Wages

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

35. The acts described above constitute violations of the Fair Labor Standards Act and Okla. Stat. tit. 40 § 165.3 for failure to pay wages and retaliation for complaining of the same.

36. Defendant did not pay Plaintiff her increased rate of pay from in or around August 2013 through June 2014.

37. As a direct and proximate cause of Defendant's unlawful conduct, Plaintiff suffered a loss of income and other damages. As such, Plaintiff is entitled to recover lost wages, liquidated damages, attorneys' fees and costs incurred in connection with this claim.

38. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA and Oklahoma state law. Defendant knew or showed reckless disregard for the fact that its compensation practices were in violation of these laws and retaliated against Plaintiff after she complained of the same.

### COUNT III - Whistleblowing

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

39. The acts above-described also constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., reporting patient safety issues, unsafe working conditions and pay violations.

40. As damages, Plaintiff has suffered lost earnings, past and future, and other compensatory damages.

41. Because the actions of the Defendant were willful, wanton or, at the least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## REQUEST FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment in favor of the Plaintiff and against the Defendant and assess actual, compensatory, punitive damages, and liquidated damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 12st DAY OF MAY, 2015.**

        s/Jana B. Leonard
        JANA B. LEONARD, OBA# 17844
        EMILY VAN VOLKINBURG, OBA#31744
        LEONARD & ASSOCIATES, P.L.L.C.
        8265 S. WALKER
        OKLAHOMA CITY, OK 73139
        (405) 239-3800     (telephone)
        (405) 239-3801     (facsimile)
        leonardjb@leonardlaw.net
        emilyv@leonardlaw.net

        JURY TRIAL DEMANDED
        ATTORNEY LIEN CLAIMED